

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-15-00458-CV

**IN THE INTEREST OF C.F.N.**, a Child

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2014-PA-01576
Honorable Richard Garcia, Judge Presiding

Opinion by: Sandee Bryan Marion, Chief Justice

Sitting: Sandee Bryan Marion, Chief Justice
Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed: October 28, 2015

AFFIRMED

This is an appeal from the trial court's order terminating appellant's parental rights to her daughter, C.F.N., who was born on May 18, 2011.[1] In a single issue, appellant challenges the sufficiency of the evidence in support of the trial court's finding that termination of her parental rights was in the child's best interest. *See* TEX. FAM. CODE ANN. § 161.001(2) (West 2014). We affirm.

### BACKGROUND

Juliana Palmer, the caseworker with the Texas Department of Family and Protective Services (the "Department"), testified the Department received an initial referral in November 2013 alleging drug use by the mother and that the house where she was residing was dirty and

---

[1] C.F.N. was about four years old at the time of the termination hearing.

unsanitary. Palmer described the conditions in the house as "deplorable," with filth everywhere, including feces and urine on the ground, no running water, and no electricity.

Palmer stated the Department initially worked with the mother, who was living "in and out" of her boyfriend's house. Eventually, however, the Department filed its petition for termination in July 2014. Palmer testified that, at the time of the July 2, 2015 termination hearing, appellant had engaged in some of her family service plan requirements, but she had not been able to resolve her housing issue. According to Palmer, appellant said she was living with her uncle. However, because appellant provided the new address the afternoon before the commencement of the termination hearing, Palmer had not yet verified the address.

Palmer said that, although appellant had completed drug treatment in September 2014, she tested positive for methadone on three different occasions. However, appellant never provided verification that the drug was prescribed or a valid contact for where she received drug treatment. Appellant told Palmer she received the methadone from the Center for Health Care Services, but Palmer was unable to confirm this because appellant did not provide Palmer with a signed release. Palmer did not think appellant was attempting to discontinue use of the drug. Despite spending approximately (according to appellant) $336 a month to purchase the methadone for herself, appellant provided no financial support for her daughter. Palmer said appellant's boyfriend, Sergio Huerta, used heroin, had a criminal history, and was on parole. Huerta did not submit to the drug testing requested by the Department.

Palmer said appellant was currently unemployed, although she had been employed at some point during the pendency of the case. According to Palmer, out of a total of almost forty-five visits appellant could have attended with her daughter, appellant had visited only once. About one month before the termination hearing, appellant asked Palmer to schedule a visit with her daughter, but Palmer declined because appellant tested positive for methadone and would not verify whether

the drug was legally prescribed. Palmer said appellant also completed a parenting class in March 2014. Appellant was on probation following a prostitution charge. Palmer said appellant told her she occasionally drove by the residence where the child was placed, and seeing her daughter outside was "enough."

C.F.N. was officially placed with Lupita G. in August 2014. When Palmer asked the child to identify her mother, the child referred to Lupita. Palmer believed termination was in C.F.N.'s best interest because the child does not know who her mother is and did not recognize her mother in a photograph. She said C.F.N. is always appropriately dressed, fed, and cared for; the child is happy; her social and emotional needs are being met; and she is doing well in school. Lupita wants to adopt C.F.N.

Palmer said appellant is unable to do anything for her daughter: she provided no support; she had no plan to provide C.F.N. with a bed; and she had no available diapers, clothes, shoes, or food for the child. Palmer believed C.F.N. would be "in great danger" if she was returned to appellant because appellant has not demonstrated an ability to provide the child with safe and stable housing. When asked what specific danger she presented to her child, Palmer said (1) appellant had a long history of drug abuse; (2) she engaged in prostitution; (3) at one point her probation had been revoked, she was sentenced to jail, and then released again on probation; (4) appellant is "not stable" and cannot provide a stable environment for C.F.N.; (5) Huerta has not demonstrated sobriety; and (6) throughout the case, the house from which C.F.N. was taken remained in a "deplorable" condition. These circumstances demonstrated to Palmer that appellant had not made any positive changes to her lifestyle despite completing some of her services.

Appellant testified she had been living with her uncle for the past month, and intended to live there until she found her own residence. When asked what efforts she was making to secure her own residence, appellant replied, "Oh, just working and just — I was going to school but I'm

just going to put that on hold until I get everything situated, getting a house first." She said she started working for a "temp agency" about two weeks before the termination hearing. Appellant said she still used methadone, which she claimed she received from the Northwest San Antonio Treatment Center.

Appellant said she had not seen her daughter in a long time because she could only visit in the evenings and no one from the Department worked at night to supervise the visits. She said she had her uncle's help if her daughter resided with her, and that she and Huerta already had made arrangements for clothing and a toddler's bed. Appellant said she and Huerta are still together, he is not using drugs, and both of them are in counseling. Appellant claimed she was not using drugs and was not a danger to her daughter.

## BEST INTEREST

A trial court may order termination of the parent-child relationship only if the court finds by clear and convincing evidence one or more statutory grounds for termination and that termination is in the child's best interest. TEX. FAM. CODE § 161.001(1), (2); § 161.206(a). There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, when the court considers factors related to the best interest of the child, "the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." TEX. FAM. CODE § 263.307(a). In determining whether a child's parent is willing and able to provide the child with a safe environment, we consider the factors set forth in Family Code section 263.307(b).

We also apply the non-exhaustive *Holley* factors to our analysis. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). And finally, evidence that proves one or more statutory grounds for termination may constitute evidence illustrating that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002) (holding same evidence may be probative of both section

- 4 -

161.001(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). A best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest. *Id.*

When reviewing the sufficiency of the evidence, we apply the well-established standard of review. *See* TEX. FAM. CODE §§ 101.007, 161.206(a); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (factual sufficiency).

In this case, there is evidence that appellant (1) has, in the past, lived in filthy, deplorable conditions with her daughter, and has only recently moved in with her uncle; (2) been arrested for prostitution; (3) failed to visit or support C.F.N. even when appellant was allegedly employed; (4) uses methadone; and (5) has no specific plans for regular employment or stable housing. There is also evidence that (1) Lupita is the only "mother" the child knows, (2) the child does not know or recognize appellant, and (3) Lupita wants to adopt C.F.N. and has provided the child with a stable and safe environment. Finally, there is evidence that, while in Lupita's care, C.F.N. is always appropriately dressed, fed, and cared for; she is happy; her social and emotional needs are being met; and she is doing well in school. From these facts, one can reasonably deduce that appellant lacked the ability, skills, or desire to care for C.F.N.; and that C.F.N. needs a stable home environment, which appellant either could not or would not provide. On this record, we conclude the evidence permits a reasonable factfinder to form a firm conviction and belief that termination of the parent/child relationship was in C.F.N.'s best interest.

Sandee Bryan Marion, Chief Justice